UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| v. | § | CRIMINAL ACTION H-14-171S-12 |
| | § | |
| DEBORAH DAVIS | § | |

## Order

Pending before the court are the following three motions filed by defendant Deborah Davis: (1) a motion for a bill of particulars (Dkt. 274); (2) a motion to dismiss the superseding indictment (Dkt. 275); and (3) a motion for discovery of particular *Brady* materials (Dkt. 276). Having considered the motions, responses, and applicable law, the court is of the opinion that the motion for a bill of particulars should be GRANTED IN PART and the other two motions should be DENIED..

### I. THE SUPERSEDING INDICTMENT

The superseding indictment first details how the Medicare program works and notes that Medicare Part B covers partial hospitalization programs ("PHPs") connected with the treatment of mental illness. Dkt. 136 ¶¶ 1-15. It then alleges that Continuum Healthcare, LLC owned three different community mental health centers in the Greater Houston Area that billed for PHP services that were not medically necessary and, in some cases, not provided. *Id.* ¶¶ 16–19. Similarly, it alleges that Westbury Community Hospital billed for PHP services that were not medically necessary and, in some cases, not provided. *Id.* ¶ 20. Defendants David Edson and Jeffery Parsons allegedly formed My Fellow Man Alliance ("MFMA") as a tax-exempt corporation to take over the Continuum "bed lease program." *Id.* ¶ 21. According to the superseding indictment, Davis was a personal care home owner and a patient advocate for Continuum.

The superseding indictment alleges that Davis and others conspired to (1) defraud the United States by, among other things, obstructing the Government in its administration of the Medicare program; (2) violate Title 42, U.S.C. § 1320a-7b(b)(1) by soliciting and receiving kickbacks and bribes; (2) violated Title 42, U.S.C. § 1320a-7b(b)(2) by offering and paying kickbacks and bribes. *Id.* ¶ 34. The superseding indictment asserts that Edson and Parsons caused Continuum to issue checks to patient advocates and personal care homeowners for referrals of Medicare beneficiaries to Continuum's or Westbury's PHP program and caused Continuum or MFMA to issue checks to personal care home owners for bed leases in exchange for the referral of Medicare beneficiaries by those personal care home owners. *Id.* ¶¶ 36–39. It alleges, specifically, that Davis received approximately $155,000.00 from Continuum or Westbury in exchange for referring her clients to PHP services at Continuum or Westbury. *Id.* ¶ 67. It then alleges that Edson and Parsons caused Continuum and Westbury to bill Medicare approximately $4.3 million for PHP services allegedly needed by, and provided to, the clients referred by Davis and that Edson and Parsons caused Medicare to pay approximately $1.6 million to Continuum and Westbury for PHP services allegedly needed by, and provided to, clients referred by Davis. *Id.* ¶¶ 68–69.

Paragraph 74(i) of the indictment contains the overt act alleged by Davis in furtherance of the alleged conspiracy; it states that on October 16, 2009, Edson and Parsons caused payment of approximately $2,308.00 to Davis in exchange for the referrals. *Id.* ¶ 74(i). Count 10 names Davis in connection with the contention that the defendants aided and abetted each other in paying kickbacks and bribes in exchange for referrals and includes the $2,308.00 payment to Davis on October 15, 2009. *Id.* at 22-23.

## II. BILL OF PARTICULARS

Davis argues that the charges in the superseding indictment are broad in scope and duration, and do not allege which reimbursement claims form the basis of the charges. Dkt. 274. Davis contends that without knowing the specific reimbursement claims, she cannot prepare for trial as her counsel would be forced to comb through $199 million and several years' worth of reimbursement claims in hopes of identifying relevant claims, she would likely be unfairly surprised at trial, and she may be subject to double jeopardy in the future, as the Government could refrain from using a certain claim at trial, even if the claim forms the basis for the superseding indictment, and then use the charge in a later prosecution. *Id.* Davis additionally argues that the bed lease program described in paragraphs 37 through 39 of the superseding indictment is within the exemptions to the Anti-Kickback Statute for space or equipment rental, and the superseding indictment fails to provide adequate notice how the bed lease violates the statute. *Id.* (citing 42 C.F.R. § 1001.952(b) and (c)). Davis also states that the superseding indictment alleges in paragraph 36 that the defendants were employed as patient advocates and issued checks to them, and argues that, since bona fide employees or those under personal services contracts may be exempt under the safe harbors of the Anti-Kickback Statute, the superseding indictment does not provide notice as to how any remuneration to Davis as an employee or one under a personal services contract violated the law. *Id.* Davis contends that she cannot prepare for trial without knowing the specific violations of the Anti-Kickback Statute and the exemptions thereto. *Id.* She argues that if the Government contends that the exemptions to the Anti-Kickback Statute do not apply, then it should be required to allege its reasons now rather than waiting to ambush Davis at trial. *Id.*

The Government argues that it is not required to provide more specificity with regard to specific reimbursement claims in the indictment because Davis's contentions relating to the need for specific reimbursement claims made under the bed lease program, the patient advocate agreement, or her employment are all affirmative defenses for which Davis bears the burden of proof, not the Government. Dkt. 290 (citing *United States v. Job*, 387 F. App'x 445, 455 (5th Cir. 2010) and *United States v. Sisson*, 299 U.S. 267, 288 (1970)). The Government additionally argues that the superseding indictment provides sufficient specificity with regard to the basis of the kickback charge. *Id.* It alleges that Davis received kickbacks in exchange for referring Medicare beneficiaries who were clients of her personal care home. *Id.* The Government asserts that this is "clearly a finite number of beneficiaries for which Davis housed in her personal care home and for which she received illegal remuneration for referring to Continuum [Missouri City]," an outpatient center for Westbury Community Hospital. *Id.* The Government states that it has made available all evidence seized, including the bed lease contracts and supporting documents. *Id.* It argues that a "bill of particulars was not designed to allow a defendant to limit the government's evidence or to receive detailed disclosure of the government case before trial and therefore avoid reviewing discovery in a fraud case." *Id.* (citing *Kilrain*, 566 F.2d at 985).

**A. Legal Standard**

Federal Rule of Criminal Procedure 7(f) authorizes a court to direct the government to file a bill of particulars. Fed. R. Crim. P. 7(f). The purpose of a bill of particulars is to "cure omissions of details that might enable the defendant to prepare his defense." *United States v. Haas*, 583 F.2d 216, 221 (5th Cir. 1978) (quoting *Norris v. United States*, 152 F.2d 808, 811 (5th Cir. 1946)) (internal quotations omitted). Thus, a bill of particulars may prevent prejudicial surprise at trial. *See*

*United States v. Moody*, 923 F.2d 341, 351 (5th Cir. 1991). However, a bill of particulars is not a matter of right, and the district court exercises discretion in granting or denying a defendant's motion. *United States v. Williams*, 679 F.2d 504, 510 (5th Cir. 1982). And, the district court will not be reversed for failing to grant a request for a bill of particulars unless the defendant can show that he or she "was actually surprised at trial and thereby incurred prejudice to his [or her] substantial rights." *Id.*

"A bill of particulars is not required if a defendant is otherwise provided, *inter alia*, with sufficient information to enable him to prepare his defense and avoid surprise." *Moody*, 923 F.2d at 351. Thus, if the indictment is sufficient, a district court does not abuse its discretion if it denies a motion for a bill of particulars. *United States v. Beebe*, 792 F.2d 1363, 1366 (5th Cir. 1986). For an indictment to be sufficient, it "must fairly inform the defendant of the charge against which he must defend and enable him to plead double jeopardy in future prosecutions of the same offense." *Id*. "A defendant should not use the Bill of Particulars to 'obtain a detailed disclosure of the government's evidence prior to trial.'" *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978) (quoting *United States v. Perez*, 489 F.2d 51, 70-71 (5th Cir. 1973)); *see also United States v. Montalvo*, 820 F. 2d 686, 691 (5th Cir. 1987); *United States v. Nixon*, 816 F.2d 1022, 1031 (5th Cir. 1987)). Generally, the fact that the requested information may be *useful* to the defendant does not, alone, establish the need for a bill of particulars. *United States v. Strawberry,* 892 F. Supp. 519, 526 (S.D.N.Y. 1995).

**B.     Analysis**

The court agrees that to some extent Davis's request seems to be for a detailed disclosure of the Government's evidence prior to trial. Davis specifically requests (1) the characteristics of the

5

bed lease program and facts, including acts and date, that violate 42 C.F.R. 1001.952(b); (2) the characteristics of the personal services contract and facts, including acts and dates, that violate 42 C.F.R. 1001.952(d); (3) the characteristics of the Davis employment by Continuum, and facts, including acts, and dates, that violate 42 C.F.R. 1001.952(I), and (4) the names of the Medicare beneficiaries whose claims were tainted by any alleged illegal kickbacks. Dkt. 274. To the extent Davis requests information relating to her affirmative defenses, it is not the Government's burden. Thus, the first through third requests are DENIED.

However, the court believes there is some validity to Davis's request for the names of Medicare beneficiaries whose claims were allegedly tainted by alleged illegal kickbacks. Courts have held that a bill of particulars may be appropriate when the indictment fails to specify documents and transactions that the Government contends are fraudulent, and, with regard to health care fraud, several courts have found that defendants should be provided information identifying the medical claims that were fraudulent. *United State v. Drivas*, No. 10-CR-771 (NG), 2012 WL 3011023, at *3 (E.D.N.Y. July 19, 2012); *see, e.g.*, *United States v. Vasquez-Ruiz*, 136 F. Supp. 2d 941, 943 (N.D. Ill. 2001) (holding that the defendant was entitled to know the identity of the alleged patient-victims, records claimed to have false entries, and any allegedly fraudulent bills to insurers as the "defense should not be left to its own devices and a sifting of the voluminous materials that have been provided in order to divine the particulars of these critical allegations"); *United States v. Nachamie*, 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000) (noting that the Government had produced over 200,000 pieces of paper but had not informed the defendants which of the claims were false and requiring the Government to identify the false and misleading claims it intended to prove at trial); *cf. United States v. Davidoff*, 845 F.2d 1151, 1155 (2d Cir. 1988) (noting that while the Government

bed lease program and facts, including acts and date, that violate 42 C.F.R. 1001.952(b); (2) the characteristics of the personal services contract and facts, including acts and dates, that violate 42 C.F.R. 1001.952(d); (3) the characteristics of the Davis employment by Continuum, and facts, including acts, and dates, that violate 42 C.F.R. 1001.952(I), and (4) the names of the Medicare beneficiaries whose claims were tainted by any alleged illegal kickbacks. Dkt. 274. To the extent Davis requests information relating to her affirmative defenses, it is not the Government's burden. Thus, the first through third requests are DENIED.

However, the court believes there is some validity to Davis's request for the names of Medicare beneficiaries whose claims were allegedly tainted by alleged illegal kickbacks. Courts have held that a bill of particulars may be appropriate when the indictment fails to specify documents and transactions that the Government contends are fraudulent, and, with regard to health care fraud, several courts have found that defendants should be provided information identifying the medical claims that were fraudulent. *United State v. Drivas*, No. 10-CR-771 (NG), 2012 WL 3011023, at *3 (E.D.N.Y. July 19, 2012); *see, e.g.*, *United States v. Vasquez-Ruiz*, 136 F. Supp. 2d 941, 943 (N.D. Ill. 2001) (holding that the defendant was entitled to know the identity of the alleged patient-victims, records claimed to have false entries, and any allegedly fraudulent bills to insurers as the "defense should not be left to its own devices and a sifting of the voluminous materials that have been provided in order to divine the particulars of these critical allegations"); *United States v. Nachamie*, 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000) (noting that the Government had produced over 200,000 pieces of paper but had not informed the defendants which of the claims were false and requiring the Government to identify the false and misleading claims it intended to prove at trial); *cf. United States v. Davidoff*, 845 F.2d 1151, 1155 (2d Cir. 1988) (noting that while the Government

may excuse the lack of a bill of particulars by providing materials, "such material may not be automatically relied on by the Government as an adequate substitute for a straightforward identification in a bill of particulars of the identity of the victims of offenses that the prosecution intends to prove"); *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) (finding that the "Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged").

Here, Davis claims that she cannot adequately prepare for trial with the information provided in the indictment because it would require her to "comb through $199 million and seven years' worth of reimbursement claims related to numerous PHPs and services and thousands of patients in hopes of identifying relevant claims." Dkt. 274. The Government asserts that the superseding indictment alleges that Davis received kickbacks in exchange for referring Medicare beneficiaries who were clients of her personal care home, which is a clearly finite number of beneficiaries.[1] Dkt. 290. The Government further contends that it made available to Davis all of the evidence seized, including the bed lease contracts and all supporting documents. While it is possible for the Government to fulfill its obligations by providing materials, if the materials are voluminous, then documents alone are not a substitute for disclosure of the alleged fraudulent transactions. Davis's motion for a bill of particulars is GRANTED to the extent she requests the names of the Medicare beneficiaries whose claims were tainted by any alleged illegal kickbacks. The Government shall provide a bill of particulars providing this information to Davis within thirty (30) days of the date of this order.

---

[1] While the Government implies that the fact the kickbacks relate to Davis's personal care home limits the number of documents, it is unclear how much it reduces the volume.

### III. MOTION TO DISMISS

Davis also moves to dismiss the superseding indictment under Federal Rule of Criminal Procedure 12(b)(3)(B). She argues that the conduct in which the superseding indictment alleges she engaged all falls within the statutory safe harbor provisions of the anti-kickback statute and is thus not illegal. Dkt. 275. Specifically, she contends that the compensation alleged as part of the bed lease agreements falls within the space or equipment rental safe harbors, and the compensation alleged relating to Davis's work as a patient advocate falls within the personal service and management contracts or employee safe harbors. *Id.* The Government argues that the safe harbor provisions constitute affirmative defenses that Davis must prove. Dkt. 292. The Government contends that the Fifth Circuit has never required it to allege, address, or rule out any affirmative defenses in order to sufficiently allege a criminal offense. *Id.* The court agrees that Davis's defenses are affirmative defenses and that the Government is not under an obligation to anticipate and rule out every affirmative defense in its indictment. *See United States v. Sisson*, 399 U.S. 267, 288, 90 S. Ct. 2117 (1970) ("It has never been thought that an indictment, in order to be sufficient, need anticipate affirmative defenses."). Accordingly, Davis's motion to dismiss (Dkt. 275) is DENIED.

### IV. MOTION FOR DISCOVERY OF PARTICULAR *BRADY* MATERIALS

Davis's final motion requests that the Government provide exculpatory materials relating to her relationship with Continuum and Westbury and relating to the bed lease contracts by responding to a list of discovery requests paragraph-by-paragraph and stating what is being produced and whether it has declined to produce materials in its possession or control. Dkt. 276. The Government contends that it provided all defense counsel with a disc containing the scanned documents from the Westbury location and that it has repeatedly made available to Davis for inspection the remaining

evidence as it attempts to scan and provide these documents in a similar fashion.[2]  Dkt. 291.  The Government acknowledges that the documents are voluminous, but points out that it is in no better position than Davis to locate any potentially exculpatory evidence.  *Id.*

There is no indication that the Government has padded its disclosures with superfluous documents in an effort to hide evidence and it appears the Government has either provided Davis with all of the evidence it has or is in the process of doing so.  The Government is not obligated under *Brady* to "furnish [Davis] with exculpatory evidence that is fully available to [Davis] through the exercise of due diligence."  *Kutzner v. Cockrell*, 303 F.3d 333, 336 (2002); *United States v. Mulderig*, 120 F.3d 534, 541 (5th Cir. 1997) (noting that the Government's obligations under *Brady* do not "require it to point the defense to specific documents with[in] a larger mass of material that it has already turned over" (quotations and citations omitted)).  Accordingly, Davis's motion for discovery of particular *Brady* materials is DENIED.

## V. Conclusion

Davis's motion for a bill of particulars (Dkt. 274) is GRANTED IN PART as described above.  Davis's motions to dismiss (Dkt. 275) and for discovery of specific materials (Dkt. 276) are DENIED.

Signed at Houston, Texas on November 25, 2014.

Gray H. Miller
United States District Judge

---

[2]  Davis pointed out specific boxes from Westbury that the Government had not yet provided, but the Government asserts that production of the missing boxes is forthcoming.  Dkt. 291 at 2 n.2.